**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X   Case No. 21-cv-5175
DAWIT MAMO,

                          Plaintiff,                          **COMPLAINT**

      - against -

CURTISS-WRIGHT CORPORATION, and SCOTT       **PLAINTIFF DEMANDS**
SCHOEPS, individually,                                      **A TRIAL BY JURY**

                          Defendant.
------------------------------------------------------------------------X

DAWIT MAMO, ("Plaintiff"), by and through his attorneys, PHILLIPS & ASSOCIATES, PLLC, against CURTISS-WRIGHT CORPORATION ("CURTISS-WRIGHT") and SCOTT SCHOEPS ("SCHOEPS"), individually (together, "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the race discrimination provisions of the **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) the sex discrimination provisions of **Title VII**; (iii) the retaliation provisions of **Title VII**; (iv) **Section 1981 of the Civil Rights Act of 1866** ("Section 1981"); (v) the race discrimination provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (vi) the sexual orientation discrimination provisions of **NYSHRL**; (vii) the retaliation provisions of the **NYSHRL**; (viii) the sexual orientation discrimination and retaliation provisions of the **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 *et seq.* ("SCHRL"); and (ix) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3. The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated June 23, 2021, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

8. The parties also entered into a tolling agreement which gave Plaintiff thirty (30) days to file this Complaint from the date either party notified the other party that the tolling agreement was terminated.

9. Defendants terminated the tolling agreement on September 7, 2021. Thus, the tolling agreement expires on October 7, 2021.

## PARTIES

10. Plaintiff is a Black man and a resident of the State of New York. At all relevant times herein, he was and is a "person" and an "employee" entitled to protection as defined by Title VII, 42 U.S.C. § 1981, the NYSHRL and the NYCHRL.

11. At all relevant times herein, Defendant CURTISS-WRIGHT CORPORATION ("CURTISS-WRIGHT") was and is a Delaware corporation with a principal place of business located at 130 Harbour Place Drive, Suite 300, Davidson, North Carolina, and is an "employer" under the relevant statutes. Defendant CURTISS-WRIGHT operates a manufacturing facility located at 1966 Broadhollow Road, Bldg. E, Farmingdale, NY 11735.

12. Defendant SCHOEPS is a natural person residing in the State of New York and a supervising manager employed by Defendant CURTISS-WRIGHT. He is sued individually and in his capacity as manager of Defendant CURTISS-WRIGHT. Defendant SCHOEPS had the authority to affect the terms and conditions of Plaintiff's employment.

13. At all relevant times herein, Defendant CURTISS-WRIGHT "employs" fifteen and thus one or more "employees," and is thus an "employer" within the meaning of Title VII, the NYSHRL and the SCHRL. Defendant SCHOEPS is an "employer" and "person" within the meaning of Title VII, the NYSHRL and the SCHRL.

## MATERIAL FACTS

14. Plaintiff was hired by Defendant CURTISS-WRIGHT on April 11, 2016 as an Assembly and Test Trainee since April 11, 2016, earning $19.75 per hour.

15. Plaintiff's work performance has always met or exceeded the reasonable expectations of Defendant CURTISS-WRIGHT.

16. In fact, by the beginning of 2021, Plaintiff had earned several promotions, culminating in Assembly and Test 2nd Class Technician and several raises in his hourly wage, bringing his current salary to $27.69 per hour.

17. On November 27, 2020, Defendant SCHOEPS invited Plaintiff and five other employees out to a local bar to have a drink together in celebration of the holiday season.

18. While at the bar that evening, Defendant SCHOEPS began to make disparaging remarks and comments to Plaintiff because of what Plaintiff was drinking and the hairstyle he was wearing.

19. During that exchange, Defendant SCHOEPS ridiculed Plaintiff for his sexual orientation, calling him "gay," a "pussy" and a "faggot."

20. Later that same evening, Plaintiff observed Defendant SCHOEPS giving him a dirty look while seated across the bar. Immediately after, Defendant SCHOEPS pulled down his mask and said to the bartender "I don't like Black people."

21. Even after being admonished by the bartender for the comment, Defendant SCHOEPS stated "but still, I don't really like them."

22. On November 30, 2020, Plaintiff approached another supervisor, Allen Diaz ("Diaz"), about the incident. Diaz, who had also witnessed the events on November 27, 2020, offered to speak to Defendant SCHOEPS on Plaintiff's behalf. Plaintiff, still humiliated and incensed, refused the offer.

23. On December 1, 2020, Plaintiff approached Defendant SCHOEPS and asked him if he had a minute to talk in his office. During this meeting, Plaintiff expressed to Defendant SCHOEPS how humiliated and upset he was because of the things Defendant SCHOEPS said to him at the bar on November 27, 2020.

24. Defendant SCHOEPS responded to Plaintiff's complaints by asserting that he did not remember saying those things to Plaintiff on that night, and that complaints like these were the reason that Defendant SCHOEPS did not like to attend events with his coworkers outside of the workplace. Defendant SCHOEPS then told Plaintiff that he did not have time to talk about this and that he needed to get back to work.

25. Plaintiff, upset by Defendant SCHOEPS apathy, left Defendant SCHOEPS' office and

instead went to Diaz' office. At this time, Plaintiff opted to take Diaz up on his offer to speak to Defendant SCHOEPS on Plaintiff's behalf regarding the incident at the bar.

26. When Diaz approached Defendant SCHOEPS, Defendant SCHOEPS again refused to take responsibility for his actions.

27. On December 2, 2020, Plaintiff and Defendant SCHOEPS encountered one another while working. Defendant SCHOEPS asked Plaintiff if he was okay. Plaintiff responded that he was not because he felt as though Defendant SCHOEPS was dismissive of him and his feelings the day before.

28. Defendant SCHOEPS explained that he was curt with him because he thought Plaintiff had approached him to discuss the prospect of a promotion.

29. Plaintiff took this opportunity to express to Defendant SCHOEPS that Plaintiff did indeed believe that his work performance, length of time working there, and the recent promotions of similarly qualified peers that began working there long after Plaintiff warranted a promotion of his own to First Class Technician.

30. Defendant SCHOEPS responded, in sum and substance, "I don't want to give you First Class because of what you said," referring to Plaintiff's complaint about him, and walked away.

31. On January 5, 2021, Plaintiff went into Defendant SCHOEPS' office to inquire about a valve Plaintiff was working on.

32. While in Defendant SCHOEPS' office, Plaintiff and Defendant SCHOEPS also discussed another incident during which Defendant SCHOEPS called another employee a "terrorist." Plaintiff expressed that if Defendant SCHOEPS would say that about another employee for refusing to complete a task, Plaintiff wondered what Defendant SCHOEPS would say about Plaintiff if he also refused to do something.  At least one other employee witnessed

SCHOEPS call this employee a terrorist.

33. Defendant SCHOEPS responded to Plaintiff by asking him "why you bringing up old shit?" Defendant SCHOEPS then said that he conferred with another one of Plaintiff's supervisors, Dave Neidig ("Neidig"), regarding Plaintiff's potential promotion to First Class Technician, and that Neidig said that Plaintiff is neither capable nor qualified to perform the duties of the position.

34. On January 6, 2021, Plaintiff contacted Neidig to confirm if what Defendant SCHOEPS relayed to Plaintiff regarding a potential promotion was true. Neidig denied ever saying anything of that effect to Defendant SCHOEPS.

35. On January 8, 2021, Plaintiff requested that new union representative, Mike Masano ("Masano"), approach Defendant SCHOEPS about all the incidents that had occurred between himself and Plaintiff up to that point.

36. On January 11, 2021, Plaintiff contacted the corporate division of Defendant CURTISS-WRIGHT regarding the November 27, 2020 incident between himself and Defendant SCHOEPS to report SCOEPS discriminatory comments and conduct.

37. On January 12, 2021, Plaintiff requested that Masano formally file a report on Plaintiff's behalf with the Human Resources department of Defendant CURTISS-WRIGHT.

38. On January 18, 2021, Plaintiff attended a meeting with Human Resources Manager, Gregg Santi ("Santi"). At this meeting, Plaintiff told Santi everything that transpired between himself and Defendant SCHOEPS, emphasizing the incident that occurred on November 27, 2020.

39. In response to Plaintiff's complaints, Santi expressed displeasure with the fact that Plaintiff had complained to corporate, and had not instead first come to him directly.

40. Some days later, Plaintiff attended another meeting with Santi. In this meeting, Santi

expressed doubt as to Plaintiff's recollection of Defendant SCHOEPS' comments to him. Specifically, Santi stated, "I don't get it. What, did Scott just come right out and say it?"

41. Plaintiff responded by telling Mr. Santi this is not the first time Defendant SCHOEPS has made racially charged remarks in the workplace. Plaintiff referenced another incident in which Defendant SCHOEPS said he "can get any monkey in here [the workplace] to turn a wrench."

42. Santi asked Plaintiff why he had never reported the incident involving the "monkey" comment made by Defendant SCHOEPS. Plaintiff replied that, at the time, he was a new employee and did not want his peers to develop a bad perception of him. However, several other employees also heard SCHOEPS make this discriminatory comment.

43. Ultimately, no further action was taken to halt Defendant SCHOEPS' racially discriminatory treatment of Plaintiff.

44. Defendants' discrimination is not limited to just Plaintiff, and is custom and practice as part of the culture at Curtiss-Wright.

45. For example, and upon information and belief, other middle eastern employees were called "terrorists" by Defendant SCHOEPS.

46. SCHOEPS has also said in the work place that he can get any monkey (a derogatory term referring to Black people) to come in and turn a wrench.

47. Another long tenured black employee was referred to as a "nigger" by another employee in front of a group employees.

48. There are no black employees in senior leadership positions at Defendants' company.

49. On another occasion, SCHOEPS' son (who also works for Defendants) put a work tool device that functioned similar to a gun to the neck of a black employee and threatened to shoot her with the tool. The black employee reported SCHOEPS' son but she was the

7

person fired.

50. Plaintiff has consistently been treated less favorably than other employees and given less favorable terms and conditions of employment than other employees, including, but not limited to, diminished potential for career advancement.

51. Defendants actions and conduct were intentional and intended to harm Plaintiff.

52. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53. Since the events detailed herein, Plaintiff has submitted paperwork for medical leave from the workplace, including Family and Medical Leave Act (FMLA) leave.

54. Additionally, as a result of Defendants' discriminatory treatment, Plaintiff has suffered pecuniary loss, severe emotional distress, and physical ailments.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

56. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against Defendants.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*
**(Against Defendant CURTISS-WRIGHT Only)**

57. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their

compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.] (emphasis added)

59. As described above, Defendant discriminated against Plaintiff on the basis of his race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment and subjecting Plaintiff to disparate treatment based on his race.

60. As a result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

61. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
*Sex Discrimination in Violation of Title VII*
**(Against Defendant CURTISS-WRIGHT Only)**

62. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin[.] (Emphasis added.)

64. As described above, Defendant discriminated against Plaintiff on the basis of his sex, in

violation of Title VII, by subjecting him to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his sexual orientation.

65. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
*Retaliation in Violation of Title VII*
**(Against Defendant CURTISS-WRIGHT Only)**

67. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

69. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding Defendant's discrimination based on sex.

70. As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional

distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as other compensatory damages and other relief.

71. The unlawful discriminatory actions of Defendant's constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
*Race Discrimination in Violation of 42 U.S.C. § 1981*

72. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73. 42 U.S.C. § 1981(a) states, in the relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

74. Defendants intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 1981 on account of his race.

75. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

76. The conduct of Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FIFTH CAUSE OF ACTION
*Retaliation in Violation of 42 U.S.C. § 1981*

77. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

78. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to and complaints of unlawful discrimination in violation of 42 U.S.C. §1981.

79. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

80. The conduct of Defendants was outrageous, was done in a deliberate, callous, malicious, and oppressive manner intended to injure Plaintiff, and was done in conscious disregard of Plaintiff's rights. Plaintiff is therefore also entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
*Race Discrimination in Violation of the NYSHRL*

81. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. (emphasis added)

83. As described above, Defendants discriminated against Plaintiff on the basis of his race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among

12

other things, harassment and subjecting Plaintiff to disparate treatment based on his race.

84. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

85. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

86. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
*Sexual Orientation Discrimination in Violation of the NYSHRL*

87. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, **sexual orientation**, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. (Emphasis added.)

89. As described above, Defendants discriminated against Plaintiff on the basis of his sexual orientation in violation of NYSHRL, by subjecting him to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy

13

a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's sexual orientation.

90. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

91. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

92. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**EIGTH CAUSE OF ACTION**
*Retaliation in Violation of the NYSHRL*

93. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

94. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

95. As a result of Plaintiff's complaint regarding sexual orientation discrimination, Defendants spread false and defamatory statements about Plaintiff, described herein, thereby negatively impacting his ability to earn a living.

96. Defendants violated the section cited herein as set forth.

## NINTH CAUSE OF ACTION
*Sexual Orientation Discrimination in Violation of the SCHRL*

97. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

98. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that

    > It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

99. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived race, color, creed, age, national origin, alienage or citizenship status, gender, **sexual orientation**, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

100. As described above, Defendants discriminated against Plaintiff on the basis of his sexual orientation in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

101. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

102. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## TENTH CAUSE OF ACTION
*Retaliation in Violation of the SCHRL*

103. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104. Regulatory Local Laws of Suffolk County § 528-7(A)(6) provides that it is unlawful "[f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any individual because he or she has: (a) Opposed any practices forbidden under this article…"

105. As a result of Plaintiff's complaint regarding sexual orientation discrimination, Defendants spread false and defamatory statements about Plaintiff, described herein, thereby negatively impacting his ability to earn a living.

106. Defendants violated the section cited herein as set forth.

## JURY DEMAND

107. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. § 1981, the NYSHRL and the SCHRL in that Defendants discriminated against Plaintiff on the basis of his race and retaliated against Plaintiff for complaining about this discrimination;

B. Restraining Defendants from any retaliation against Plaintiff for participating in any form in this litigation;

C. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants'

unlawful discrimination, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Garden City, New York
September 17, 2021

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

_____/s/_____
Joshua Friedman
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
jfriedman@tpglaws.com